Jeremy C. Reutzel (10692)
Jarom R. Jones (16077)
Adam D. Goff (18389)
BENNETT TUELLER JOHNSON & DEERE
3165 East Millrock Drive, Suite 500
Salt Lake City, Utah 84121
Telephone: (801) 438-2000
Facsimile: (801) 438-2050
Email: jreutzel@btjd.com; jjones@btjd.com; agoff@btjd.com

*Attorneys for Defendant Stack Real Estate, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ASVALO REAL ESTATE, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>STACK REAL ESTATE, LLC,<br><br>      Defendant. | **STACK REAL ESTATE, LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**<br><br>Civil No. 2:23-cv-00728-BSJ<br><br>Honorable Bruce S. Jenkins |

## RELIEF SOUGHT

Defendant STACK Real Estate, LLC, ("**Stack**"), by and through its counsel of record, and in accordance with Rules 7, 12, and 56 of the Federal Rules of Civil Procedure, and Local Rule DUCivR 7-1 and 56-1, hereby moves the Court to dismiss with prejudice Plaintiff Asvalo Real Estate, LLC's ("**Asvalo**") claims for relief against Stack – alleging declaratory relief, breach of contract, and promissory estoppel – for failure to state a claim (the "**Motion to Dismiss**" or "**MTD**") or, alternatively, to grant Stack summary judgment

on the foregoing claims (the "**Motion for Summary Judgment**" or "**MSJ**" and, with the Motion to Dismiss, the "**Combined Motion**").

## INTRODUCTION

This is a breach of contract case. In late-December 2019, Stack and Asvalo entered into a *Contract Rights Purchase Agreement* (the "**Asvalo-Stack Agreement**"), whereby Stack obtained Asvalo's rights to purchase approximately 20 acres of land located near the North Farmington Station in Farmington, Utah (the "**Property**"). Specifically, at the time of, and prior to, the Asvalo-Stack Agreement, the Property was owned by nonparty Amenti, Inc. ("**Amenti**"). In May 2019, Amenti agreed to sell the Property pursuant to a *Purchase and Sale Agreement for Commercial Real Estate* (the "**Purchase Agreement**") between Amenti, as seller, and nonparty Mountain States Property Management, Inc. ("**Mountain States**"), as buyer, who, in turn (in early-December 2019), agreed to transfer its purchase rights under the Purchase Agreement to Asvalo who, in turn (later that month), agreed to transfer its purchase rights under the Purchase Agreement to Stack pursuant to the Asvalo-Stack Agreement.

Pursuant to the Asvalo-Stack Agreement, and in exchange for Asvalo's rights to purchase the Property from Amenti, Stack paid Asvalo an initial purchase price of $500,000, plus reimbursed Asvalo a $100,000 earnest money payment Asvalo had previously made. Upon making these payments, the Asvalo-Stack Agreement then permitted Stack to elect one of two courses of action: (1) Stack could complete the purchase of the Property from Amenti pursuant to the Purchase Agreement and then provide Asvalo additional

consideration—namely, either the opportunity to purchase certain property or, alternatively, receive an additional purchase price. Alternatively, (2) "[i]f [Stack] determine[d] not to complete the purchase of the Property in accordance with the terms of the Purchase Agreement [with Amenti], and instead desire[d] to sell its rights under the Purchase Agreement to an unrelated third party," Stack merely had to honor a right of first refusal ("**ROFR**") in favor of Asvalo—permitting Asvalo the opportunity to repurchase the buyer's rights under the Purchase Agreement "on the same terms and conditions applicable to the proposed sale of such rights to such third party." Stack elected the second option.

Specifically, on September 14, 2020, Stack gave notice to Asvalo that "Wasatch Residential Group, LLC [("**Wasatch Residential**")], a Utah limited liability company, or a designated entity owned or organized by it," offered to purchase Stack's rights in the Purchase Agreement on certain terms and conditions. Stack asked Asvalo to either exercise or waive its ROFR. Preferring Stack to elect the first option – to complete the purchase of the Property from Amenti and, consequently, give Asvalo additional consideration – Asvalo objected to the proposed sale. Asvalo argued that Wasatch Residential was not an "unrelated third party" because, under the proposed offer, Stack would be given the right to invest in Wasatch Residential.

To assuage Asvalo's concerns (whether meritorious or not), and to ensure there was no doubt about Stack's compliance with the Asvalo-Wasatch Agreement, Stack sent Asvalo another notice, informing Asvalo that any investment rights would be withdrawn from the offer. Stack also provided Asvalo with copies of the specific agreements Stack would enter

3

into with Wasatch Residential's affiliated entity, Wasatch Farmington Holdings, LLC

("**Wasatch Farmington**"), who would be the proposed purchaser of Stack's rights under

the Purchase Agreement. Pursuant to the proposed agreement between Stack and Wasatch

Farmington, Wasatch Farmington would "have the right to assign its rights under this

Agreement and the Purchase Agreement one time to an affiliate." Stack then asked Asvalo,

again, to either exercise or waive its ROFR.

Asvalo objected again. Asvalo complained this time that, even if Stack would not

have any investment rights in Wasatch Residential, because Stack was electing option two,

Stack should be required to sell both its rights in the Property and in any other land Stack

owned near North Farmington Station. But implicitly acknowledging that the Asvalo-Stack

Agreement imposed no such obligation, Asvalo ultimately informed Stack that "Asvalo

declines to exercise and hereby waives any right of first refusal it may have with respect to

the Proposed Transaction between Stack and Wasatch." In reliance upon Asvalo's express

waiver, Stack sold and transferred its rights in the Purchase Agreement to Wasatch

Farmington on the terms and conditions offered to Asvalo.

Notwithstanding that all of the foregoing happened over two years ago, Asvalo still

has seller's remorse that it agreed Stack could sell its rights to a third party. In a new effort to

claim that Stack could not sell its rights as bargained for – and instead was required to give

Asvalo the additional consideration it hoped for – Asvalo abandons its prior arguments—

namely, that Wasatch Farmington was not an "unrelated third party" or, alternatively, Stack

was obligated to give up any right to develop near North Farmington Station to transfer its

4

rights. Asvalo now demands the additional consideration in the Asvalo-Stack Agreement

because Asvalo speculates, "[u]pon information and belief, STACK actually sold and

transferred its rights under the Agreement to a company called MTSE HOLDINGS

2020010 LLC" ("**MTSE**") and Stack allegedly "never disclosed to Asvalo th[is] sale and

transfer of its rights." *See* Dkt No. 4 (Compl.) ¶¶ 29-30. Asvalo bases this belief on a special

warranty deed recorded September 30, 2020, transferring the Property from Amenti to

MTSE. *Id.*

Based upon this allegation, Asvalo asserts three causes of action against Stack for

declaratory judgment, breach of contract, and promissory estoppel—all hinging on the same

allegation that "STACK failed to fulfill its contractual obligations to provide notice of the

terms and conditions of STACK's sale and transfer of its rights under the Agreement to

MTSE . . . ." *Id.* ¶¶ 48, 52, 59. But all of Asvalo's claims fail under the allegations of the

Complaint. First, Asvalo fails to state a claim for breach of contract because (i) the

Complaint alleges no facts giving rise to the plausible inference that a sale or transfer

between Stack and MTSE occurred, (ii) the Complaint's allegations in any event show

Asvalo was given notice such a sale and transfer could occur, and (iii) the Complaint's

allegations demonstrate Stack substantially complied with the Asvalo-Stack Agreement.

Second, Asvalo fails to state a claim for promissory estoppel because the Stack-Asvalo

Agreement is valid and enforceable. And third, Asvalo fails state a claim for declaratory

judgment because the declaratory judgment requested in the Complaint is duplicative and

redundant of Asvalo's other claims. Stack is therefore entitled to dismissal of the Complaint under Rule 12(b)(6).

Asvalo's Complaint also fails for an even more fundamental reason. Asvalo's key allegation is untrue. Stack never sold or transferred its rights to MTSE. Rather, consistent with the notices received by Asvalo, Stack sold and transferred its rights to Wasatch Farmington. Wasatch Farmington then in turn, to effectuate a 1031 Exchange, transferred its rights to MTSE, who closed under the Purchase Agreement and purchased the Property from Amenti—recording the special warranty deed. These facts are undisputed. Thus, even if the Court could not dismiss Asvalo's speculative and erroneous allegations under Rule 12(b)(6), Stack is alternatively entitled to summary judgment on Asvalo's claims.

In sum, Asvalo regrets giving Stack the right to transfer its purchase rights to a third party. Asvalo has conjured up various reasons for why Stack should not be permitted this bargained-for right—each reason more untenable than the last. Asvalo's latest allegation – that the special warranty deed leads to the implausible inference that Stack sold its rights to MTSE without notice to Asvalo – can survive neither a Motion to Dismiss nor Motion for Summary Judgment. Stack therefore asks the Court to grant the Combined Motion and dismiss the Complaint with prejudice.

## ALLEGATIONS OF THE COMPLAINT RELEVANT TO THE MTD

Asvalo makes the following allegations in its Complaint relevant to determining the

Motion to Dismiss[1]:

¶ 13    On or around December 31, 2019, Asvalo and STACK reduced
their agreement to writing, entering into a Contract Rights
Purchase Agreement, dated December 31, 2019 (the
"Agreement").

¶ 19    On or about September 14, 2020, STACK provided Asvalo with
a letter of intent ("LOI") setting forth the terms of a proposed
transaction wherein STACK would sell its rights under the
Purchase Agreement to Wasatch Residential Group, LLC
("Wasatch Residential").

¶ 23    On or about September 22, 2020, STACK delivered another
letter to Asvalo . . . . Attached to the letter was a new proposed
agreement entitled Contract Rights Purchase Agreement between
STACK and an entity called Wasatch Farmington Holdings, LLC
("Wasatch Farmington Holdings").

¶ 27    On or about September 25, 2020, Asvalo sent a final letter to
STACK . . . .

¶ 28    On or about October 1, 2020, STACK sent Asvalo a final letter
stating that a sale of STACK's rights to the Property to an affiliate
of Wasatch "has been completed." . . .

¶ 29    Upon information and belief, STACK actually sold and
transferred its rights under the Agreement to a company called
MTSE HOLDINGS 2020010 LLC through a Special Warranty
Deed dated September 30, 2020.

¶ 52    STACK materially breached the Agreement by virtue of the
conduct alleged herein as set forth more fully above, including by

---

[1] Stack references the below allegations only for the convenience of the Court—to identify those allegations in the Complaint most relevant to determining Stack's Motion to Dismiss. Consistent with Rule 12(b)(6), and only for purposes of the MTD, Stack accepts as true these allegations (and any other allegations in Asvalo's Complaint) only to the extent they are well-pleaded factual allegations. Stack does not accept as true any legal conclusions or conclusory factual allegations, including paragraphs 29 and 52 of the Complaint. Further, in restating and asserting arguments based on the Complaint's allegations, Stack in no way admits the validity of such allegations. Stack's MSJ relies solely on the evidence cited in the Statement of Undisputed Material Facts below.

failing to provide written notice of the terms and conditions of STACK's sale and transfer of its rights under the Agreement to MTSE HOLDINGS 2020010 LLC such that Asvalo could exercise its right of first refusal, as set forth under Section 8(c) of the Agreement; and by refusing to pay Asvalo the Additional Purchase Price required under Section 8(b) of the Agreement.

## STATEMENT OF UNDISPUTED MATERIAL FACTS FOR MSJ[2]

1.      Stack and Asvalo entered the Asvalo-Stack Agreement on December 31, 2019.

*See* Dkt No. 4 (Compl.) ¶ 13; Declaration of Andrew Bybee ("***Bybee Decl.***"), at ¶ 4,

attached to the Appendix as **Exhibit A**; Asvalo-Stack Agreement, attached to the Appendix

as **Exhibit B**.

2.      In the Asvalo-Stack Agreement, it states in relevant part as follows:

8(b)    . . . . After the Multifamily Approval has been obtained, and in no event later than the date that is two (2) years after the date of this Agreement (['Stack's] Election Deadline'), **unless [Stack] has elected to sell the Property to a third party pursuant to Section(c)** [sic], [Stack] shall have the option to take one of the following two courses of action . . . . Sell the Multifamily Property to Assignor . . . OR Pay Assignor the Additional Purchase Price . . . .

8(c)    If [Stack] determines not to complete the purchase of the Property in accordance with the terms of the Purchase Agreement, and instead desires to sell its rights under the Purchase Agreement to an unrelated third party, [Asvalo] shall have a right of first refusal ('ROFR') to purchase such rights from [Stack] on the same terms and conditions applicable to the

---

[2] In addition to considering the below facts for purposes Stack's Motion for Summary Judgment, the Court may also, for purposes of Stack's Motion to Dismiss, consider Exhibits B through E and Exhibit H below, because these documents are referenced in Asvalo's Complaint. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.") *Id.*

> proposed sale of such rights to such third party (the 'Third Party Offer'). In such event, [Stack] shall give [Asvalo] written notice (the 'ROFR Notice') of the terms and conditions of the Third Party Offer. [Asvalo] shall have the right to exercise the ROFR to purchase [Stack's] rights under the Purchase Agreement upon the same terms and conditions set forth in the Third Party Offer by notifying [Stack] in writing of such exercise prior to the close of business on the day that is five (5) days after the date of the ROFR Notice. If [Asvalo] does not so exercise the ROFR, then the ROFR shall terminate, and [Stack] may sell its rights under the Purchase Agreement to the prospective buyer in accordance with terms and conditions no more favorable to the buyer than the terms set forth in the Third Party Offer. . . .

*See* Dkt No. 4 (Compl.) ¶ 13; Ex. A (Bybee Decl.) at ¶ 5; Ex. B (Asvalo-Stack Agreement) §§ 8(b)-(c) (emphasis added).

3.    On September 14, 2020, Stack sent Asvalo a letter (the "**First ROFR Notice**"). Accompanying the First ROFR Notice was a *Letter of Intent* of the same date from Wasatch Residential (the "***LOI***"), which states in relevant part: "Wasatch Residential Group, LLC, a Utah limited liability company, **or a designated entity owned or organized by it** ('Wasatch') is prepared to acquire the property described below (the 'Property') under the following terms and conditions . . . ." *See* Dkt No. 4 (Compl.) ¶ 19; Ex. A (Bybee Decl.) at ¶ 6; First ROFR Notice, LOI, at 1 (emphasis added), attached to the Appendix as **Exhibit C**.

4.    On September 22, 2020, Stack sent a letter to Asvalo (the "***Second ROFR Notice***"), which states in relevant part as follows:

> . . . . Accompanying this letter is a copy of the contract rights purchase agreement that STACK and Wasatch intend to sign and perform. . . . Given that Asvalo has had the information it needs to make its decision on the right of first refusal for more than a week . . . we request that Asvalo make its final decision whether

> to exercise its right of first refusal by 5:00 p.m. on Thursday,
> September 24, 2020, . . . .

*See* Dkt No. 4 (Compl.) ¶ 23; Ex. A (Bybee Decl.) at ¶ 7; Second ROFR Notice, attached to

the Appendix as **<u>Exhibit D</u>**.

5.      Accompanying the Second ROFR was an unexecuted *Contract Rights Purchase*

*Agreement* between Wasatch Farmington (an affiliate of Wasatch Residential) and Stack (the

"***Third Party Offer***"), which stated:

> This Agreement, and the terms, covenants, and conditions in this
> Agreement contained, shall inure to the benefit of and be binding
> upon the heirs, personal representatives, successors, and assigns
> of each of the Parties.  [Wasatch] shall not assign its rights under
> this Agreement or under the Purchase Agreement without the
> prior written consent of [Stack]; provided that ***[Wasatch] shall***
> ***have the right to assign its rights under this Agreement and***
> ***the Purchase Agreement one time to an affiliate controlled***
> ***by or under common control with [Wasatch]*** without
> [Stack's] consent.

*See* Dkt No. 4 (Compl.) ¶ 23; Ex. A (Bybee Decl.) at ¶ 8; Ex. D (Second ROFR Notice),

Third Party Offer § 17(g) (emphasis added).

6.      On September 25, 2020, Asvalo sent Stack a letter (the "***Asvalo Waiver***"),

which states in relevant part as follows: "Asvalo declines to exercise and hereby waives any

right of first refusal it may have with respect to the Proposed Transaction between Stack and

Wasatch." *See* Dkt No. 4 (Compl.) ¶ 27; Ex. A (Bybee Decl.) at ¶ 9; Asvalo Waiver, attached

to the Appendix as **<u>Exhibit E</u>**.

7.      On September 29, 2020, Stack and Wasatch Farmington entered into a

*Contract Rights Purchase Agreement* (the "***Stack-Wasatch Agreement***"), where Stack agreed to

assign to Wasatch Farmington its rights as the buyer under the Purchase Agreement that Stack obtained by the Asvalo-Stack Agreement. *See* Ex. A (Bybee Decl.) at ¶ 10; Stack-Wasatch Agreement, attached to the Appendix as **Exhibit F**.

8.      On September 30, 2020, to permit Wasatch Farmington to effectuate a 1031 Exchange, Wasatch Farmington and MTSE entered into an *Assignment and Assumption of Purchase Agreement*, wherein Wasatch Farmington assigned to MTSE (Wasatch Farmington's affiliate) its rights obtained by the Stack-Wasatch Agreement (the "***Wasatch-MTSE Agreement***"). *See* Ex. A (Bybee Decl.) at ¶ 11; Wasatch-MTSE Agreement, attached to the Appendix as **Exhibit G**.

9.      This same date, Amenti, Inc. ("***Amenti***") transferred the Property to MTSE by Special Warranty Deed. *See* Dkt No. 4 (Compl.) ¶ 29; Ex. A (Bybee Decl.) at ¶ 12; Special Warranty Deed, attached to the Appendix as **Exhibit H**.

## ARGUMENT

## I. THE COURT SHOULD GRANT STACK'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. The Court Should Dismiss Asvalo's Breach of Contract Claim.

"The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Syme v. Symphony Group LLC*, 2018 UT App 212, ¶ 23, 437 P.3d 576 (internal citations omitted). Here, Asvalo alleges "STACK materially breached the Agreement . . . by failing to provide written notice of the terms and conditions of STACK's sale and transfer of

its rights under the Agreement to MTSE HOLDINGS 2020010 LLC such that Asvalo could

exercise its right of first refusal . . . ." *See* Dkt No. 4 (Compl.) ¶ 57. Asvalo's allegation of

breach fails for at least three independent reasons.

### 1. Asvalo Fails to Plausibly Allege that Stack Sold and Transferred Its Rights to MTSE.

It is axiomatic that "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). "A plausible claim includes facts from which we may reasonably infer

Defendant's liability. Plaintiffs must nudge the claim across the line from conceivable or

speculative to plausible. Allegations that are merely consistent with a defendant's liability

stop short of that line." *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir.

2021). "We must draw on our experience and common sense in evaluating the plausibility of

a claim." *Id.*

Asvalo fails to allege sufficient facts supporting a plausible inference that Stack sold

and transferred its rights to MTSE as opposed to Wasatch Farmington. Asvalo alleges that,

"[u]pon information and belief, STACK actually sold and transferred its rights under the

Agreement to a company called MTSE Holdings 20200010 LLC through a Special Warranty

Deed dated September 30, 2020." *See* Dkt No. 4 (Compl.) ¶ 29. But the Special Warranty

Deed referenced nowhere mentions or even alludes to a transfer of rights from Stack to

MTSE. Rather, the Special Warranty Deed merely transfers the Property from Amenti to

MTSE pursuant to the Purchase Agreement. *See* Ex. H (Special Warranty Deed). That an entity other than Wasatch Farmington ultimately purchased the Property from Amenti is insufficient for the inferential leap that Stack sold its rights as buyer under the Purchase Agreement to MTSE, especially given the allegations of the Complaint showing that the purchase rights have been repeatedly transferred (including in short succession after a prior purchase).

Further, the conclusory allegation that Stack transferred its rights to MTSE is also belied by all of the other allegations of the Complaint, including the First ROFR Notice that Stack may transfer its rights to "a designated entity owned or organized by" Wasatch Residential, *see* Dkt No. 4 (Compl.) ¶ 13, the Second ROFR Notice identifying Wasatch Farmington as the recipient of Stack's rights, *see* Dkt No. 4 (Compl.) ¶ 23, and all of the Complaint's allegations concerning joint development efforts between Stack and Wasatch Farmington, *see* Dkt No. 4 (Compl.) ¶¶ 32-43. Given the considerable back and forth between the parties prior to the sale, and Stack's care in giving Asvalo notice of the exact agreement it intended signing with Wasatch Farmington, it is implausible to infer from the Special Warranty Deed (and nothing more) that Stack suddenly changed course and sold its rights to MTSE.

In short, while a transfer of Stack's rights to MTSE or any other entity (as opposed to Wasatch Farmington) was, of course, possible, Asvalo alleges no facts in the Complaint to nudge this conclusory allegation across the line from conceivable or speculative to plausible. Asvalo's claim that Stack breached the Asvalo-Stack Agreement by transferring its rights to

MTSE must therefore be dismissed.

### 2. Even if Stack Had Sold Its Rights to MTSE, the ROFR Notices Alleged in the Complaint Give Notice that the Sale Could Occur to Another Entity.

As discussed in Stack's Motion for Summary Judgment (in argument II below), Stack in fact transferred its purchase rights to Wasatch Farmington, not MTSE. But even if the Complaint plausibly alleged that Stack transferred its rights to MTSE, and the Court was required to assume that allegation as true for purposes of Stack's Motion to Dismiss, Asvalo still has not alleged a breach of contract. The Complaint's allegations refer to documents showing Stack gave notice to Asvalo that the rights could be transferred on the same terms to an entity other than Wasatch Residential or Wasatch Farmington.

Specifically, in the LOI Stack provided to Asvalo in the First ROFR, Stack gave Asvalo notice that, "Wasatch Residential Group, LLC, a Utah limited liability company, **_or a designated entity owned or organized by it_** ('Wasatch') is prepared to acquire the property described below (the 'Property') under the following terms and conditions . . . ." *See* Dkt No. 4 (Compl.) ¶ 19; Ex. C (First ROFR), LOI (emphasis added). Later, in the Third Party Offer that Stack provided to Asvalo in the Second ROFR, Stack gave Asvalo notice again that the rights could be assigned to another entity. In particular, the Third Party Offer included a term that:

> This Agreement, and the terms, covenants, and conditions in this Agreement contained, shall inure to the benefit of and be binding upon the heirs, personal representatives, successors, and assigns of each of the Parties. [Wasatch] shall not assign its rights under this Agreement or under the Purchase Agreement without the prior written consent of [Stack]; provided that **_[Wasatch] shall_**

> **have the right to assign its rights under this Agreement and the Purchase Agreement one time to an affiliate controlled by or under common control with [Wasatch]** without [Stack's] consent.

*See* Dkt No. 4 (Compl.) ¶ 23; Ex. D (Second ROFR Notice), Third Party Offer § 17(g) (emphasis added).

In sum, consistent with the requirement in the Asvalo-Stack Agreement that "[Stack] shall give [Asvalo] written notice (the 'ROFR Notice') of the terms and conditions of the Third Party Offer," *see* Ex. B (Asvalo-Stack Agreement) § 8(c), Stack gave written notice to Asvalo (twice) of the Third Party Offer, including notice that the rights may be assigned to an entity other than Wasatch Residential or Wasatch Farmington. Therefore, Asvalo has not alleged (and cannot allege) that "STACK materially breached the Agreement . . . by failing to provide written notice of the terms and conditions of STACK's sale and transfer of its rights under the Agreement to MTSE HOLDINGS 2020010 LLC such that Asvalo could exercise its right of first refusal . . . ." *See* Dkt No. 4 (Compl.) ¶ 57. The Court should thus dismiss Asvalo's breach of contract claim.

### 3. Even if Stack Had Sold Its Rights to MTSE Without Notice, the ROFR Notices Substantially Complied with the Asvalo-Stack Agreement.

"The general rule with respect to what performance is required when a contract is made for the agreed exchange of two performances, one of which is to be rendered first, is not strict, literal, and exact compliance with the terms of the contract but rather only substantial compliance or substantial performance." *See Haynes v. Department of Public Safety*, 2020 UT App 19, ¶ 7 (quoting 15 Williston on Contracts § 44:52 (4th ed. 2019)). In other

words, "substantial performance may excuse a [breaching party's] omissions." *See Central Utah Water Conservancy Dist. v. Upper East Union Irr. Co.*, 2013 UT 67, ¶ 25 n.2. It is "[o]nly a material breach [that] will excuse further performance by the non-breaching party." *See Cross v. Olsen*, 2013 UT App 135, ¶ 26. For example, Utah courts have held that a breaching party has substantially performed where (in the case of an installment contract) there was "a mere delay of a month by one party in making a payment," *see Saunders v. Sharp*, 840 P.2d 796, 806 (Utah Ct. App. 1992), or (in the case of a lease) a lessee paid its tax obligation only after notice from the lessor of its failure to do so, *see U-Beva Mines v. Toledo Min. Co.*, 471 P.2d 867, 869 (Utah 1970). A party has also "substantially performed when the only variance from the strict and literal performance consists of technical or unimportant omissions or defects." *See Central Utah Water*, 2013 UT 67, ¶ 25 n.2.

Even if Stack had sold its rights to MTSE (it did not), and Asvalo did not have notice that the rights may be assigned to an entity other than Wasatch Residential or Wasatch Farmington (the documents the Complaint references demonstrate the opposite), Stack's ROFR Notices substantially complied with the Asvalo-Stack Agreement. Specifically, other than claiming that "STACK never disclosed to Asvalo the sale and transfer of its rights under the Agreement to MTSE," *see* Dkt No. 4 (Compl.) ¶ 30, Asvalo does not otherwise allege that the sale and transfer made by Stack differed from the terms in the two ROFR Notices. Specifically, other than an alleged defect in the technical identity of the transferee, Asvalo had notice of all other material terms and conditions of the sale and still chose to waive its ROFR. *Id.* ¶ 27. Accordingly, as a matter of law Stack substantially performed the

16

Asvalo-Stack Agreement. And Asvalo was not excused from its obligation to timely exercise the ROFR in response to the two ROFR Notices had it wished to do so. The Court should therefore grant Stack's Motion to Dismiss.

**B.  <u>The Court Should Dismiss Asvalo's Promissory Estoppel Claim.</u>**

The Complaint fails to allege a claim for promissory estoppel for at least two independent reasons. First, it is axiomatic that "promissory estoppel is available only to a party who has no right to relief under an enforceable contract." *See E & H Land, Ltd. V. Farmington City*, 2014 UT App 237, ¶ 29, 336 P.3d 1077. "[I]f a legal remedy is available, such as breach of an express contract, the law will not imply the equitable remedy . . . ." *See American Towers Owners Ass'n, Inc. v. CCI Mechanical, Inc.*, 930 P.2d 1182, 1193 (Utah 1996), *abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, 221 P.3d 234. Here, the Complaint alleges, and the referenced documents establish, an enforceable contract in the form of the Stack-Asvalo Agreement. Accordingly, equitable relief is not available and Asvalo's promissory estoppel claim must be dismissed with its breach of contract claim.

Second, at any rate, Asvalo fails to allege sufficient facts to state a claim for promissory estoppel. "A party claiming promissory estoppel must establish the following: (1) a promise reasonably expected to induce reliance; (2) reasonable reliance inducing action or forebearance on the part of the promise or a third person; and (3) detriment to the promise or third person." *Cottonwood Imp. Dist. v. Qwest Corp.*, 2013 UT App 24, ¶ 3, 296 P.3d 754. The only promise alleged by Asvalo in its promissory estoppel claim is that Stack "would provide

written notice of the terms and conditions of any proposed sale of its rights under the Agreement, such that Asvalo could exercise a right of first refusal to purchase those rights on the same terms and conditions." *See* Dkt No. 4 (Compl.) ¶ 59. As discussed above with respect to Asvalo's breach of contract claim, the Complaint does not allege any facts that this alleged promise was breached. In particular, the Complaint does not (and cannot) plausibly allege that Stack transferred its rights to MTSE, that Asvalo lacked notice that the rights may be assigned to an entity other than Wasatch Residential or Wasatch Farmington, or that Stack otherwise failed to substantially perform its notice obligations. The Court should therefore dismiss Asvalo's promissory estoppel claim.

## C. __The Court Should Dismiss Asvalo's Declaratory Judgment Claim.__

"The court may refuse to render or enter a declaratory judgment or decree where a judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." *See* Utah Code § 78B-6-404. Simply put, a declaratory judgment claim must "serve a useful purpose." *See Miller v. Weaver*, 66 P.3d 592, 601 (Utah 2003). For this very reason, "[c]ourts routinely dismiss declaratory judgment claims when they are duplicative of breach of contract claims." *See LM General Insurance Co. v. LeBrun*, 470 F.Supp.3d 440, 456 (E.D. Pa. 2020).[3] Under such circumstances, "the claim for

---

[3] *See Levy v. West Coast Life Insurance Company*, 44 F.4th 621, 628-29 (7th Cir. 2022) ("Since the Levy's breach-of-contract and declaratory-judgment claims were substantively identical, we find no abuse of discretion in the court's decision to dismiss the latter as duplicative."); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1126 (8th Cir. 2012) (affirming dismissal of declaratory judgment claim where "[Plaintiff] does not contend that his declaratory judgment claim differs materially from his contract claims"); *Lim v. Radish Media Inc.*, Case No. 22-1610, 2023 WL 2440160, at *2 (2d Cir. Mar. 10, 2023) ("Plaintiff's declaratory judgment claim was thus correctly dismissed because no useful purpose

breach of contract would necessarily involve adjudication of the issues implicated in the claim for declaratory relief." *See Butta v. GEICO Casualty Company*, 400 F.Supp.3d 225, 233 (E.D. Pa. 2019).

Here, Asvalo's declaratory judgment claim is a mirror image of its breach of contract claim. Specifically, in its declaratory judgment claim,

> Asvalo seeks a declaration from this Court that (a) STACK's conduct, as alleged herein, is in breach of the Agreement, (b) that STACK failed to fulfill its contractual obligations to provide notice of the terms and conditions of STACK's sale and transfer of its rights under the Agreement to MTSE HOLDINGS 2020010 LLC such that Asvalo could exercise its right of first refusal, as set forth in Section 8(c) of the Agreement, and (c) that STACK is obligated to pay Asvalo the Additional Purchase Price required under Section 8(b) of the Agreement, and (d) that Asvalo is entitled to recoup its attorneys' fees and costs pursuant to Section 14(f) of the Agreement.

*See* Dkt No. 4 (Compl.) ¶ 48. Accordingly, the Court should dismiss Asvalo's declaratory judgment claim as duplicative and redundant of its failed breach of contract claim.

## II. THE COURT SHOULD GRANT STACK'S MOTION FOR SUMMARY JUDGMENT

For all of the same reasons as in Stack's Motion to Dismiss, the Court may grant summary judgment to Stack. Specifically, even if the Complaint's conclusory allegation of a transfer to MTSE is assumed true, Asvalo had notice that Stack's purchase rights may be transferred to an entity other than Wasatch Residential or Wasatch Farmington, and Stack at

---

would be served in granting Plaintiff declaratory relief where the issues on which Plaintiff seeks declaratory relief necessarily have to be decided in the resolution of the breach of contract claims."); *cf. Wallin v. Cannon*, 2011 WL 7416973, at *1 (Utah Dist. Ct. Oct. 19, 2011) ("The Court concludes that the declaratory judgment claim is duplicative in nature.").

any rate substantially complied with the Asvalo-Stack Agreement. Further, the Complaint's promissory estoppel claim still fails because the Asvalo-Stack Agreement is enforceable and the declaratory judgment claim still fails because it is duplicative.

In addition to the foregoing reasons, the Court may also grant summary judgment to Stack on an additional ground—namely, the Complaint's conclusory allegation that Stack sold and transferred its rights to MTSE cannot survive the undisputed fact that Stack did not. As sworn by Andrew Bybee, and demonstrated by the relevant transaction documents, Stack sold and transferred its rights to Wasatch Farmington on the terms and conditions for Asvalo waived with respect to its ROFR. *See* Ex. A (Bybee Decl.) at ¶ 10; Ex. F (Stack-Wasatch Agreement). Wasatch Farmington, not Stack, then transferred the purchase rights to MTSE to effectuate a 1031 Exchange. *See* Ex. A (Bybee Decl.) at ¶ 11; Ex. G (Wasatch-MTSE Agreement). Accordingly, contrary to Asvalo's breach claim that there was a "sale and transfer of [Stack's] rights under the Agreement to MTSE," *see* Dkt No. 4 (Compl.) ¶ 52, the undisputed facts show there never was any such sale or transfer from Stack to MTSE.

In sum, the Court should grant Stack's Motion to Dismiss. However, in the event the Court does not grant Stack's Motion to Dismiss, the Court should alternatively grant Stack summary judgment on all of Asvalo's claims.

## **CONCLUSION**

Stack is entitled to the dismissal of Asvalo's claims—all of which hinge on the allegation that "STACK materially breached the Agreement . . . by failing to provide written notice of the terms and conditions of STACK's sale and transfer of its rights under the

Agreement to MTSE." Asvalo fails to state a claim for breach of contract because (i) the Complaint alleges no facts supporting a conclusion that Stack transferred its rights to MTSE, (ii) the Complaint in any event alleges Asvalo had notice the transfer could occur to an entity other than Wasatch Residential or Wasatch Farmington, and (iii) the Complaint alleges facts that Asvalo substantially complied with the Asvalo-Stack Agreement. Asvalo likewise fails to state claims for promissory estoppel or declaratory judgment because, respectively, Asvalo has a legal remedy and the declaratory judgment requested is duplicative and redundant. Moreover, for purposes of summary judgment, it is undisputed that Stack did not sell or transfer its rights to MTSE. Stack therefore ask the Court to grant the Combined Motion and dismiss the Complaint with prejudice.[4]

DATED November 9, 2023.

BENNETT TUELLER JOHNSON & DEERE

/s/ Jarom R. Jones
Jeremy C. Reutzel
Jarom R. Jones
Adam D. Goff
*Attorneys for Defendant Stack Real Estate, LLC*

---

[4] Stack further requests that it be awarded its attorneys' fees and costs pursuant Section 14(f), of the Asvalo-Stack Agreement. Upon the Combined Motion being submitted, Stack will submit for the Court's and Asvalo's review for reasonableness a declaration of attorneys' fees and costs.