IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **ASVALO REAL ESTATE, LLC**, <br><br> Plaintiff, <br> v. <br><br> **STACK REAL ESTATE, LLC**, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 2:23-CV-00728-JNP <br><br> District Judge Jill N. Parrish |

On December 31, 2019, Plaintiff Asvalo Real Estate, LLC ("Asvalo") entered a contract to sell the right to purchase approximately 19.12 acres of land in Farmington City, Utah to Defendant Stack Real Estate, LLC ("Stack"). Subsequently, Stack resold the right to purchase the property in a manner that allegedly violated the Parties' contract. On October 12, 2023, Asvalo filed a complaint against Stack, alleging claims for declaratory relief, breach of contract, and promissory estoppel. ECF No. 2 ("Compl."). Before the court is Stack's motion to dismiss, or in the alternative, motion for summary judgment. ECF No. 9. For the reasons stated herein, the court converts Stack's motion to a motion for summary judgment and orders that the motion is DENIED without prejudice.

**BACKGROUND**

*The Parties*

Asvalo is a Utah limited liability company whose only member is a Texas domiciliary. ECF No. 22, at 1. Asvalo's real estate business focuses on the development of multifamily housing projects. Compl., ¶ 4. Stack is a Utah limited liability company whose only member is a Utah domiciliary. ECF No. 22, at 2. Stack's real estate business specializes in commercial development

projects. Compl., ¶ 7.

### *The Property*

The Parties' dispute stems from the sale of the right to purchase approximately 19.12 acres of land located around 1525 West Burke Lane in Farmington, Utah (the "Property"). Compl., ¶ 6. The Property falls within a larger development project called North Farmington Station, which is built around a commuter rail station in Farmington City. *Id.*, ¶ 5.

Amenti, Inc. sold the right to purchase the Property to Mountain States Property Management, LLC ("Mountain States") on or about May 1, 2019. ECF No. 9-3, at 15. Mountain States then sold its interest to Asvalo on December 19, 2019. *Id.*, at 2. In December 2019, Stack wished to acquire Asvalo's interest in the Property. At that time, Asvalo understood Stack's interest to be driven in part by the fact that the Property includes two roads that provide direct access to adjoining properties that Stack owned at North Farmington Station. Compl., ¶ 9.

### *The Agreement*

On December 31, 2019, the Parties entered a contract for Stack to acquire Asvalo's right to purchase the Property (the "Agreement"). ECF No. 9-3, at 2. Under the Agreement's terms, Asvalo agreed to transfer all of its rights and interests in the Property to Stack. *Id.* at 2. In exchange, Stack agreed to pay Asvalo a purchase price of $500,000 and an additional $100,000 to reimburse Asvalo for its deposited earnest money payment. *Id.* at 2–3.

The Agreement's interim and post-closing covenants underlie the present dispute. After acquiring Asvalo's right to purchase the Property, Stack agreed to pursue the Property's entitlement with Farmington City by seeking approval to develop nine acres of the Property into multifamily housing (the "Multifamily Portion"). ECF No. 9-3, at 5. Upon receiving such entitlements, Stack would be required to take one of three actions within two years: 1) sell the

Multifamily Portion back to Asvalo for a price set in the Agreement;[1] 2) pay Asvalo the "Additional Purchase Price";[2] or 3) resell its interest in the Property to an unrelated third party after granting Asvalo a right of first refusal ("ROFR"). *Id.*

If Stack elected the last of these options, Section 8(c) of the Agreement defined the terms by which Stack would be permitted to sell its interest in the Property without paying Asvalo the Additional Purchase Price. First, Stack would be required to "determine[] not to complete the purchase of the Property in accordance with the terms of the Purchase Agreement" negotiated between Amenti, Inc. and Mountain States. ECF No. 9-3, at 6. Second, Stack had to sell its "rights under the Purchase Agreement to an unrelated third party[.]" *Id.* Third, Stack was required to provide Asvalo with notice of the terms and conditions of any proposed sale to an unrelated third party. *Id.* Fourth, Stack could not sell its interest in the Property to an unrelated third party until Asvalo had a chance to exercise its ROFR to purchase Stack's rights on the same terms set forth in the aforementioned notice. *Id.* If Asvalo declined to exercise its ROFR within five days, Stack could then sell its interest in the Property "to the prospective buyer in accordance with terms and conditions no more favorable to the buyer than the terms set forth[.]" *Id.*

### *The Third Party Sale*

After acquiring Asvalo's interest in the Property, Stack did not pay Asvalo the Additional Purchase Price. *Id.*, ¶ 18. Nor did Stack sell the Multifamily Portion back to Asvalo. Instead, Stack opted to sell its interest in the Property to a third party under the terms set in Section 8(c) of the

---

[1] "The purchase price for the Multifamily Property shall be equal to the difference between (A) the sum of the Purchase Price paid by Assignee to Assignor hereunder plus the purchase price for the Property under the Purchase Agreement, and (B) $8.50 multiplied by the square footage of the Commercial Property (as defined below)." ECF No. 9-3, at 5.

[2] "The term 'Additional Purchase Price' means an amount equal to the difference between (A) the sum of the Purchase Price plus the amount of the purchase price for the Property paid by Assignee under the Purchase Agreement, and (B) $10.00 multiplied by the square footage of the Property, as determined by a survey of the Property." ECF No. 9-3, at 5–6.

3

Agreement.[3] The Parties' dispute therefore centers around whether Stack's sale to the third party complied with the four conditions defined in Section 8(c) of the Agreement.

On or about September 14, 2020, Stack provided Asvalo with a letter of intent ("LOI") setting forth terms of a proposed transaction in which Stack would sell its right to purchase the Property to Wasatch Residential Group, LLC ("Wasatch Residential"). ECF No. 9-4, at 4. The LOI proposed that after the sale, Stack would retain a right to "invest as a limited partner up to 50% of the development partnership equity." *Id.* The LOI also contained a provision permitting Wasatch Residential "to 'put' the Property back to Stack" at a price of approximately $7 million "[i]f entitlements for a minimum of 400 units . . . is not received within 12 months of Closing[.]" *Id.* Upon receiving the LOI, Asvalo's president stated to Stack's owner that because the LOI permitted Stack to become a fifty percent equity partner in Wasatch Residential's development of the Property, Asvalo did not consider the proposed sale to be between Stack and an "unrelated third party." *See* ECF No. 9-4, at 2. As a result, Asvalo requested that Stack either pay the Additional Purchase Price or sell the Multifamily Portion back to Asvalo. *Id.*

Subsequently, Stack's counsel sent a second letter of intent—along with a new proposed sale agreement—to Asvalo. ECF No. 9-5 ("LOI #2"). Under the terms proposed in LOI #2, Stack would no longer have the opportunity to become an equity partner in the Property's development. *Id.*, at 2. LOI #2 further assured Asvalo that if Stack did repurchase the Property from Wasatch Farmington, "STACK will honor its obligation[] under Section 8(b) of the Agreement" to either pay the Additional Purchase Price or sell the Multifamily Portion back to Asvalo. *Id.* at 3. LOI #2 also showed that Stack was now proposing a sale to Wasatch Farmington Holdings, LLC

---

[3] Asvalo alleges that before it delivered a letter of intent regarding its potential sale of the Property to Wasatch Residential, Stack inquired as to whether Asvalo would waive Stack's obligations under Section 8 the Agreement. ECF No. 2, ¶ 21. Asvalo further alleges that it denied the request. *Id.*

4

("Wasatch Holdings") rather than Wasatch Residential. *Id.*, at 4.

Through counsel, Asvalo responded to LOI #2 with a letter that began as follows: "Asvalo declines to exercise and hereby waives any right of first refusal it may have with respect to the proposed Transaction between Stack and Wasatch."[4] ECF No. 9-6, at 2. Asvalo's counsel then reiterated the position that LOI #2 did not set forth terms under which Stack's sale would constitute a transfer of the Property to an "unrelated third party." For a sale to an "unrelated third party" to occur, Asvalo asserted that Stack would be required to "divest itself not only from the Property, but from *all property Stack or its affiliates intended to develop as a single project along with the Property*[.]" *Id.*, at 3 (emphasis added). Asvalo's understanding, the letter explained, was "that Section 8(c) of the Agreement was intended to allow Stack to shed its obligation to make the Multifamily Property Election only in the event Stack decided to walk away from development of both the Property *and* the [North Farmington Station Development] Project (to extricate itself entirely from any development of property in this area), since Stack could sell the Property to a third party and still benefit from such third party's development of the Property by virtue of Stack's continued development of the Project and Stack could also avoid any non-development risk associated with the Project." *Id.*

Notwithstanding Asvalo's objection to Stack's proposed sale, Stack sold its interest in the Property to Wasatch Holdings under the terms proposed in LOI #2.[5] ECF No. 9-7. In a letter

---

[4] Later in the same letter, Asvalo's counsel stated that "[n]othing contained herein is intended as nor should it be deemed to constitute a waiver, relinquishment or limitation of any of Asvalo's rights or remedies, whether legal or equitable, all of which are hereby expressly reserved." ECF No. 9-6, at 3.

[5] Asvalo alleges "[u]pon information and belief" that Stack did not actually sell the Property to Wasatch Holdings, but instead transferred its rights to the Property to MTSE HOLDINGS 2020010 LLC ("MTSE") through a Special Warranty Deed dated September 30, 2020. ECF No. 2, ¶ 29. Stack never provided notice or otherwise informed Asvalo of any sale to MTSE. *Id.*, ¶ 30. Asvalo further alleges "[u]pon information and belief" that "on or around November 20, 2020, MTSE HOLDINGS 2020010 LLC conveyed the Property to Wasatch Farmington Holdings." *Id.*, ¶ 31. These allegations are contradicted by the documents produced in connection with Stack's motion. *See, e.g.,* ECF No. 9-7, at 2 (showing Stack's contract to sell its right to purchase the Property to Wasatch Holdings); ECF No. 9-8 (showing Wasatch Holdings' contract to resell the right to purchase the Property to MTSE).

5

informing Asvalo that the sale had been completed, Stack disclaimed any ongoing obligation to Asvalo under Section 8 of the Agreement. Compl., ¶ 28. The following day, Wasatch Holdings resold its right to purchase the Property to MTSE Holdings 2020010 LLC ("MTSE"). ECF No. 9-8, at 2. Amenti, Inc. then conveyed the Property to MTSE through a special warranty deed. ECF No. 9-9.

### *The Development*

Asvalo alleges that "[u]pon information and belief, since Asvalo and STACK entered into the Agreement on December 31, 2019, STACK has purchased several parcels of land at North Farmington Station, totaling approximately 108 acres." Compl., ¶ 17. Stack did not inform Asvalo about these purchases. *Id.*, ¶ 18.

Asvalo also alleges upon information and belief that Stack or a related entity and Wasatch Holdings "jointly executed a Development Agreement for North Farmington Station ('Development Agreement') with Farmington City for the purpose of developing land they own within North Farmington Station." Compl., ¶ 32. That agreement refers to Stack and Wasatch Holdings as a singular "Developer" and does not differentiate between those parties. *Id.*, ¶¶ 33–34. In the Development Agreement, Stack is designated to receive notices on the Developer's behalf. *Id.*, ¶ 35. The Development Agreement contemplates the development of 128 acres at North Farmington Station, including both Stack's 108 acres and the Property. *Id.* ¶ 36.

Farmington City, the city's Redevelopment Agency Stack, and Wasatch Holdings also executed an agreement under which Stack may receive up to a maximum aggregate incentive of $34 million for its work on the North Farmington Station development project. Compl., ¶¶ 37–39. "[I]n correspondence, reports, plans, and other documents related to the development of North Farmington Station, which were obtained by Asvalo in response to a public records request filed

6

with Farmington City," Stack is referred to as the owner and developer of North Farmington Station by various parties familiar with the project. *Id.*, ¶ 40.

**LEGAL STANDARD**

"Summary judgment is appropriate if the admissible evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Allen v. SouthCrest Hosp.*, 455 Fed. App'x 827, 830 (10th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). A party moving for summary judgment bears the burden to establish the absence of a genuine issue of material fact on the claims or elements upon which it seeks judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Kannady v. City of Kiowa*, 590 F.3d 1161, 1168-69 (10th Cir. 2010) (citations omitted). "[I]n response to a properly supported motion for summary judgment," the opposing party "must produce sufficient evidence for a reasonable trier of fact to find in its favor at trial on the claim or defense under consideration." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). Thus, "[s]ummary judgment is appropriate if the [opposing] party cannot adduce probative evidence on an element of its claim upon which it bears the burden of proof." *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1182-83 (10th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Celotex*, 477 U.S. at 323-27 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986)).

"A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *See Fuit v. Extreme Prod. Grp., LLC*, No. 1:16-CV-35-RJS, 2018 WL 1801914, at *1 (D. Utah Apr. 13, 2018) (quoting *Anderson*, 477 U.S. at 248). Moreover, "[t]o defeat a motion for summary judgment, evidence, including testimony, must be based on more

7

than mere speculation, conjecture, or surmise." *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). "[W]hen the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (cleaned up). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

"A court is not required to give notice of its intention to convert a Rule 12(b)(6) motion into a summary judgment motion when the motion was styled in the alternative." *Marquez v. Cable One, Inc.*, 463 F.3d 1118, 1121 (10th Cir. 2006) (quoting 11 James Wm. Moore, *Moore's Federal Practice* P56.30[4] at p. 56-230 (3d ed. 2006)). A plaintiff demonstrates that it was adequately put on notice of the possibility of a motion's conversion when the party relies on evidence beyond the pleadings in responding to the motion. *Id.* (citing *Building & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1496 (10th Cir. 1993) (holding that a plaintiff had adequate notice of conversion when its response to the motion demonstrated awareness that the court could convert the motion to a motion for summary judgment)).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "[T]he district court has broad discretion[,]" however, "in determining whether to accept materials beyond the pleadings." *Brokers' Choice of Am., Inc. v.*

8

*NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (citing *Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 (10th Cir. 1998)).

**ANALYSIS**

Before the court is Stack's motion to dismiss, or in the alternative, motion for summary judgment. *See* ECF No. 9. Stack's motion relies upon "matters outside the pleadings" and therefore "must be treated as [as a motion] for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The court therefore converts the motion to a motion for summary judgment.[6] Stack seeks summary judgment on Asvalo's complaint, which alleges claims for breach of contract and promissory estoppel and includes a request for declaratory relief. For the reasons stated herein, Stack's motion is denied.

### I.  BREACH OF CONTRACT CLAIM

Asvalo's first claim alleges that Stack breached the Parties' Agreement by taking one or more of the following actions: 1) transferring its interest in the Property to MTSE without providing adequate notice to Asvalo to exercise its ROFR; 2) transferring its interest in the Property to a related third party without paying the Additional Purchase Price; or 3) breaching the implied covenant of good faith and fair dealing.[7] The court denies Stack's motion for summary

---

[6] As noted above, the court need not provide notice prior to converting the pending motion to a motion for summary judgment because the motion was styled in the alternative. *See Marquez*, 463 F.3d at 1121 (quoting 11 Moore P56.30[4] at p. 56-230); *see also Building & Constr. Dep't*, 7 F.3d at 1496 (stating that a party is adequately put on notice of a motion's conversion when the party's response memorandum demonstrates awareness of the possibility of conversion by relying upon matters outside the pleadings).

[7] Asvalo's complaint contains allegations that may plausibly support each of these theories of breach. *See* Compl., ¶¶ 26–27, 52–53. At oral argument, however, Stack informed the court that it did not intend to seek summary judgment on Asvalo's breach of contract claim to the extent that Asvalo's claim relies upon the theory that Stack sold its interest in the Property to a related third party without either paying Asvalo the Additional Purchase Price or selling the Multifamily Portion back to Asvalo. But in its motion and memoranda, Stack unambiguously requested summary judgment on all of Asvalo's claims. *See, e.g.,* ECF No. 9, at 1–2 ("Defendant STACK . . . hereby moves the Court . . . to grant Stack summary judgment on the foregoing claims[.]"); 6 ("Stack is alternatively entitled to summary judgment on Asvalo's claims."); 19 ("For all of the same reasons as in Stack's Motion to Dismiss, the Court may grant summary judgment to Stack."); 20 ("[T]he Court should alternatively grant Stack summary judgment on *all of*

judgment on Asvalo's breach of contract claim for three reasons: A) the Parties' Agreement contains ambiguities that create a triable issue of fact; B) discovery is properly permitted to allow Asvalo the opportunity to seek factual support for its allegations; and C) Stack failed to show that there exists no genuine dispute as to the material fact of Asvalo's waiver of its ROFR.

### A. AMBIGUITY IN THE PARTIES' AGREEMENT

Asvalo supports its breach of contract claim in part with the assertion that when Stack transferred its interest in the Property to Wasatch Holdings, Stack and Wasatch Holdings were not "unrelated third parties" under the terms of Section 8(c) of the Parties' Agreement. As a result, Asvalo further argues, Stack incurred the obligation to pay Asvalo the Additional Purchase Price or to sell the Multifamily Portion back to Asvalo. Asvalo's claim requires the court to interpret the term "unrelated third party," for which the parties offer significantly different definitions. Ultimately, that term's ambiguity presents a dispute of fact that requires the denial of the motion.[8]

#### i. *The Parties' Proposed Interpretations*

Asvalo alleges that the parties wrote the term "unrelated third party" into their Agreement with the intent to require Stack to pay the Additional Payment Amount unless it "'decided to walk away from' the purchase (and later development) of *any* property at North Farmington Station." Compl., ¶ 27 (emphasis added). "STACK still has an interest in the Property and its development," Asvalo argues, "which means the transfer to Wasatch . . . was not a sale to an 'unrelated third party[.]'" ECF No. 17, at 12.

---

*Asvalo's claims*.") (emphasis added). The court therefore denies Stack's motion for summary judgment on Asvalo's breach of contract claim without prejudice for the reasons stated above.

[8] The parties discussed the question of the Agreement's ambiguity at oral argument. While Stack's counsel reaffirmed the position that the Agreement may be interpreted as a matter of law, Asvalo's counsel stated that the parties will need to produce parol evidence in discovery for the trier of facts to use in resolving the intended meaning of the term "unrelated third party." As discussed in this section, the court adopts Asvalo's view.

Stack, on the other hand, argues that the interpretation of "unrelated third party" must "turn[] on [the] ordinary meaning of that term." ECF No. 18, at 7. "[T]he ordinary meaning of 'third party' is '[s]omeone who is not a party to a lawsuit, agreement, or other transaction, but who is usually somehow implicated in it' someone other than the principal parties.'" *Id.* at 8 (quoting *Third Party*, Black's Law Dictionary (11th ed. 2019)). "The term 'unrelated,'" Stack continues, means "'discrete,' 'separate,' or 'not connected in any way'"; parties are "not related" when their relationship is at arm's length. *Id.* (quoting *Unrelated*, Merriam-Webster Online Dictionary (last updated January 19, 2024), available at https://www.merriam-webster.com/dictionary/unrelated); *see also Arm's-Length*, Black's Law Dictionary (11th ed. 2019).

### ii. Legal Standard

Under Utah law,[9] the court must "first look at the plain language [of the contract] to determine the parties' meaning and intent." *See Bonner Cty. v. Western Ins. Co.*, 2022 UT 38, ¶ 35, 521 P.3d 851 (quoting *Meadow Valley Contrs., Inc. v. State DOT*, 2011 UT 35, ¶ 64, 266 P.3d 671, *abrogated on other grounds by Mounteer Enters., Inc. v. Homeowners Ass'n for the Colony at White Pine Canyon*, 2018 UT 23, 422 P.3d 809). "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Id.* (quoting *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599).

"[A] contractual term or provision is ambiguous if it is capable of more than one reasonable

---

[9] A federal court sitting in diversity jurisdiction applies the choice of law rules of the state in which the court is located. *Monarch Casino & Resort, Inc. v. Affiliated FM Ins. Co.*, 85 F.4th 1034, 1039 (10th Cir. 2023) (quoting *Shearson Lehman Bros., Inc. v. M & L Invs.*, 10 F.3d 1510, 1514 (10th Cir. 1993)). "And when 'determining which state's laws will apply to a dispute, Utah courts first look to whether there was an effective choice of law by the parties.'" *First Am. Title Ins. Co. v. Barron*, 2023 UT App 109, ¶ 18, 540 P.3d 623 (quoting *Volonte v. Domo, Inc.*, 2023 UT App 25, ¶ 73, 528 P.3d 327); *see also* Restatement (Second) of Conflict of Laws § 2 cmt. a(3) (Am. L. Inst. 1971). The court therefore applies Utah law because parties' Agreement clearly states that Utah law governs the Agreement. ECF No. 9-3, at 8.

interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Id.* (quoting *Brady*, 2019 UT 16, ¶ 54). "Once the court has deemed a contract ambiguous," it is error for the court to fail to "determine[e] the parties' intent from parol evidence." *Id.* (quoting *Brady*, 2019 UT 16, ¶ 29 n.13). If a contract is integrated, however, "parol evidence is admissible *only* to clarify ambiguous terms; it is not admissible to vary or contradict the clear and unambiguous terms of the contract." *Montes v. Nat'l Buick GMC, Inc.*, 2023 UT App 47, ¶ 10, 530 P.3d 544 (quoting *Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 11, 182 P.3d 326) (emphasis added). The Agreement in this case contains a merger clause, which states that "[t]his Agreement constitutes the entire agreement of the Parties with respect to the subject matter hereof." ECF No. 9-2, at 8.

        *iii.*    **The Parties' Contract is Ambiguous**

The Agreement defines neither the term "unrelated" nor the term "third party." Asvalo's position is that Stack's sale of the Property to Wasatch was not to an "unrelated third party" because "STACK owned and planned to develop several parcels of land falling within North Farmington Station." Compl., ¶ 26. Asvalo further alleges that "a sale to an unrelated third party . . . only occurred if STACK 'decided to walk away from' the purchase (and later development) of *any* property at North Farmington Station." *Id.*, ¶ 27 (emphasis added). Perhaps the parties' employed the "unrelated third party" term—as Asvalo argues—to prevent Stack from acquiring Stack's right to purchase the Property and reselling that right to a third party while remaining closely involved in the development of North Farmington Station, wherein the Property lies (at least without either selling the Multifamily Portion back to Asvalo or paying the Additional Purchase Price). It seems plausible, at least, that Stack and Wasatch Holdings may have been "related" at the time of those parties' transaction if plans were already in place for Stack to act as

12

Wasatch's partner in developing the Property along with the North Farmington Station project more broadly. The term "related" could, depending on the facts that emerge from discovery, plausibly and reasonably be understood to include parties that conduct business at arm's length but share no ownership or other affiliation. Stack's own reply memorandum cites at least one source that supports such an interpretation.[10]

Stack's proposed interpretation of "unrelated third party" is also plausible. Stack argues that the Agreement's use of that term means that Stack was entitled to sell its interest in the Property to any legal entity that it did not share "ownership or affiliation with" at the time of the sale. ECF No. 18, at 9. The term "unrelated" may well be open to such a narrow interpretation, under which entities would be understood to be "related" in a manner that excludes long-term partners in a jointly beneficial project so long as they engage in business at arm's length. Discovery may reveal whether Stack was related to Wasatch Holdings at the time of the sale under this narrower reading of the Agreement. At this stage, the court merely concludes that Stack's proposed interpretation is a second plausible and reasonable interpretation of the Agreement's plain language.

Looking only to the "language within the four corners of the contract[,]" the court thus determines that the Agreement is "capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other deficiencies." *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 19–20, 54 P.3d 1139 (citations and internal quotation marks omitted). Because the court finds both Parties' proposed interpretations of the Agreement to be plausible

---

[10] *See* ECF No. 18, at 8 (quoting *Unrelated*, Merriam-Webster Online Dictionary (last updated January 19, 2024), available at https://www.merriam-webster.com/dictionary/unrelated) ("The term 'unrelated,' . . . means . . . 'not connected in *any way*.") (emphasis added). It would strain credulity to assert that entities that have in place an understanding that they will partner in the long-term development of a piece of property prior to the transfer of such property between them are not "connected in any way."

13

and reasonable in light of the Agreement's language, the Agreement is ambiguous as a matter of law.

> iv. *There Exists a Genuine Dispute as to the Agreement's Proper Interpretation*

As stated above, upon determining that a contact's language is ambiguous, the court must consider parol evidence regarding the parties' intent. *Bonner Cty.*, 2022 UT 38, ¶ 36 (quoting *Brady*, 2019 UT 16, ¶ 29 n.13). At this stage, however, neither party has produced extrinsic evidence of the parties' intent in drafting the Agreement. If such evidence is introduced, it will be the trier of fact's role to resolve the Agreement's ambiguity "after consideration of parol or extrinsic evidence as to the parties' intentions, that is, a review and evaluation of all the facts and circumstances surrounding the substance of the transaction." *WebBank*, 2002 UT 88, ¶ 28 (citing *Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991); *Colonial Leasing Co. v. Larsen Bros. Constr. Co.*, 731 P.2d 483, 487 (Utah 1986)). Until then, the parties' contrasting—but both plausible—interpretations of the Agreement present a genuine dispute as to a material fact. As a result, Stack's motion for summary judgment on Asvalo's breach of contract claim is denied. Fed. R. Civ. P. 56(a); *see also Ultra Clean Holdings, Inc. v. TFG-Cal., L.P.*, 534 Fed. App'x 776, 784 (10th Cir. 2013) (unpublished).

### B.  RULE 56(d)

Even if the court were persuaded by Stack's position on the proper interpretation of the Parties' Agreement, it would still deny summary judgment on the basis that summary judgment is not appropriate at this stage in litigation. Asvalo argues that it should be permitted to engage in discovery in order to obtain information relevant to the question of Stack's relationship with Wasatch at the time that Stack sold its interest in the Property. *See* ECF No. 17, at 18–19 (citing Fed. R. Civ. P. 56(d)); *see also* ECF No. 17-1 ("Swenson Decl."), ¶¶ 7–10. Asvalo's counsel

supports this request with a declaration that discovery would help her client obtain information relevant to material issues: "it appears that discovery in this case may reveal . . . the relationship between STACK and the entity to which it transferred its purchase rights[.]" Swenson Decl., ¶ 7.

The court is persuaded that Asvalo lacks information that is necessary for it to properly oppose Stack's summary judgment motion. Information regarding the question of whether Stack and Wasatch Holdings were related parties at the time of the third-party sale would be within Stack's exclusive possession. Stack has not yet answered the complaint and the parties have not exchanged initial disclosures or conducted any discovery. Because Stack has not yet had the opportunity to obtain potential information that would allow it to adequately oppose Asvalo's motion, the court would deny the motion even if there existed no dispute over the Agreement's interpretation. In short, Asvalo has demonstrated that it "cannot present facts essential to justify its opposition" and the court therefore denies Stack's motion for summary judgment on Asvalo's breach of contract claim without prejudice. *See* Fed. R. Civ. P. 56(d)(1).

### C.  WAIVER OF RIGHT OF FIRST REFUSAL

The third reason for the court's denial of the motion is that there remains a dispute as to the material fact of whether Asvalo waived its ROFR in its letter responding to LOI #2, and if it did, what effect such waiver has on Stack's obligations under Section 8(c) of the Agreement. As noted above, Asvalo's response letter to Stack began as follows: "Asvalo declines to exercise and hereby waives any right of first refusal it may have with respect to the proposed Transaction between Stack and Wasatch." ECF No. 9-6, at 2. On the following page, Asvalo wrote a contradictory disclaimer: "[n]othing contained herein is intended as nor should it be deemed to constitute a waiver, relinquishment or limitation of any of Asvalo's rights or remedies, whether legal or equitable, all of which are hereby expressly reserved." *Id.*, at 3.

Wavier is a "mixed question[] of law and fact[.]" *Chen v. Stewart*, 2004 UT 82, ¶ 23, 100 P.3d 1177 (citing *U.S. Realty 86 Assocs. v. Sec. Inv., Ltd.*, 2002 UT 14, P11, 40 P.3d 586), *overruled on other grounds by State v. Nielsen*, 2014 UT 10, 326 P.3d 645. The parties dispute whether Asvalo's letter does or does not constitute a waiver of its rights under Section 8(c) of the Agreement. *See* ECF No. 9, at 16–17 ("Asvalo had notice . . . of the sale and still chose to waive its ROFR. . . . Accordingly, as a matter of law Stack substantially performed the . . . Agreement."); ECF No. 17, at 8 ("[A]ny argument by STACK that Asvalo waived or 'abandon[ed] its prior arguments' . . . is contradicted by Asvalo's explicit confirmation that: 'Nothing contained herein is intended as nor should it be deemed to constitute a waiver, relinquishment or limitation of any of Asvalo's rights or remedies, whether legal or equitable, all of which are hereby expressly reserved.'"). The parties dispute over this mixed question of law and fact is a third reason why the court concludes that Stack has not shown there to be no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. [11] Fed. R. Civ. P. 56(a).

## II.  PROMISSORY ESTOPPEL CLAIM

Asvalo's second claim alleges that Stack is liable for nearly $2.5 million in damages under a theory of promissory estoppel "in the alternative" and "in the event the Agreement is found unenforceable or of no effect in whole or in part[.]" Compl., ¶¶ 57–63. To this point, neither party has disputed that the Parties' Agreement is enforceable. At oral argument, however, Stack's counsel conceded that Stack may or may not raise affirmative defenses to the Agreement's

---

[11] The court acknowledges that this disputed fact may or may not be material to the Parties' dispute. Stack has articulated arguments under which it asserts that it is entitled to judgment as a matter of law regardless of the waiver question. The court also recognizes, however, that the Parties expended little attention to the question of whether Asvalo in fact waived its ROFR under the Agreement, and if it did, what effect such waiver would have on Stack's other obligations under Section 8(c) of the Agreement. The court declines to resolve these questions without sufficient briefing on the issue. As a result, the court merely notes that this disputed factual question could provide a third alternative basis to deny Stack's motion if the disputed fact were found to be material to the present dispute.

formation or enforceability when it answers Asvalo's complaint. As a result, the parties agreed that in fairness, Asvalo's promissory estoppel claim should not be dismissed at this preliminary stage in the case. The court therefore concludes Stack has not demonstrated that it is entitled to judgment as a matter of law on Asvalo's promissory estoppel claim and orders that Stack's motion for summary judgment on this claim is denied without prejudice.

### III.     REQUEST FOR DECLARATORY RELIEF

Asvalo's final claim requests declaratory relief under Utah Code §§ 78B-6-401, 402, and 408. Compl., ¶¶ 44–48. Stack's sole argument related to this claim is that Asvalo's request for a declaratory judgment is "duplicative and redundant" of its breach of contact claim. ECF No. 9, at 19. Asvalo "agrees that the declaratory judgment [claim] is duplicative." ECF No. 17, at 17. But that fact alone is not sufficient to compel the entry of summary judgment on this claim.

As Stack notes, Utah law requires a declaratory judgment action to "serve a useful purpose or grant specific relief[,]" meaning the plaintiff must possess a "protectible legal interest" and present a justiciable controversy. *Miller v. Weaver*, 2003 UT 12, ¶15, 66 P.3d 592 (citing *Baird v. State*, 574 P.2d 713, 716 (Utah 1978)). But Stack has cited no binding authority stating that a declaratory judgement action under Utah law fails to meet these requirements solely because the claim is alleged to be duplicative of a breach of contract action. *See* ECF No. 9, at 18–19 (citing *LM General Ins. Co. v. LeBrun*, 470 F.Supp.3d 440, 456 (E.D. Pa. 2020); *Levy v. West Coast Life Ins. Co.*, 44 F.4th 621, 628-29 (7th Cir. 2022); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1126 (8th Cir. 2012); *Lim v. Radish Media Inc.*, Case No. 22-1610, 2023 WL 2440160, at *2 (2d Cir. Mar. 10, 2023)).

If Asvalo obtains judgment on its breach of contract claim, perhaps its declaratory judgment action would be subject to dismissal on the basis that it is impermissibly duplicative. At

17

this preliminary stage, however, the court cannot determine that Asvalo's declaratory judgment action is useless and subject to dismissal as a matter of law under the reasoning articulated in *Miller v. Weaver*.[12] The court therefore denies Stack's motion for summary judgment on Asvalo's declaratory judgment claim.

**CONCLUSION AND ORDER**

For the reasons stated herein, the court **ORDERS** that Stack's motion, which the court converts to a motion for summary judgment, is **DENIED**. Specifically:

1. Stack's motion to dismiss, or in the alternative, motion for summary judgment (ECF No. 9), is converted to a motion for summary judgment.

2. Stack's motion for summary judgment (ECF No. 9) is **DENIED** without prejudice.

Signed July 23, 2024

BY THE COURT

Jill N. Parrish
United States District Court Judge

---

[12] Some authority appears to run contrary to Stack's position that a plaintiff cannot simultaneously maintain both a breach of contract action and a duplicative declaratory judgment action. *See, e.g., AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 35, 496 P.3d 76 (noting that the district court correctly denied a motion to dismiss both a breach of contract claim and a declaratory judgment action without questioning whether one of these claims was subject to dismissal on the basis that it was duplicative of the other claim). The *AL-IN Partners* court did not discuss the issue in detail, and this court does not purport to unnecessarily resolve this question of state law. The court merely notes that some Utah courts may have tacitly permitted plaintiffs to simultaneously pursue relief under a breach of contract claim and a request for relief under Utah's Declaratory Judgment Act without dismissing the latter as impermissibly duplicative.